RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ROBERT VAN HOOK,

　　　　*Petitioner-Appellant,*

　　　*v.*

CARL S. ANDERSON, Warden,

　　　　*Respondent-Appellee.*

No. 03-4207

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 94-00269—George C. Smith, District Judge.

Argued: December 6, 2005

Decided and Filed: April 18, 2006

Before: MERRITT, MARTIN, and MOORE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** James D. Owen, Columbus, Ohio, Keith A. Yeazel, Columbus, Ohio, for Appellant. Stephen E. Maher, ATTORNEY GENERAL'S OFFICE OF OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellee. **ON BRIEF:** James D. Owen, Columbus, Ohio, Keith A. Yeazel, Columbus, Ohio, for Appellant. Stephen E. Maher, ATTORNEY GENERAL'S OFFICE OF OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

　　　MERRITT, Circuit Judge. This is a habeas petition filed pursuant to 28 U.S.C. § 2254 after petitioner, Robert Van Hook, was convicted by a three-judge panel of capital murder and aggravated robbery. We reverse the judgment of the district court and remand on the ground that Van Hook's constitutional rights were infringed when Cincinnati police started an interrogation anew with Van Hook after he had requested legal counsel in clear violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). The police bungled an otherwise strong case. As a result of this violation, Van Hook's subsequent incriminating statements and confession should have been suppressed.

　　　We will briefly recount the facts of the brutal murder that led to Van Hook's arrest. Petitioner Robert Van Hook went to a Cincinnati bar largely patronized by male homosexuals in February 1985. While there, he drank and talked with David Self. The two left together and Self told the bartender that they were planning to go to Self's apartment. Once at the apartment, and after Self approached Van Hook in a sexual manner, Van Hook strangled Self into unconsciousness. Van

1

Hook then took a knife from the kitchen, diabolically stabbed Self so that Self's internal organs were visible and then placed several items in the victim's body. He stole several items from Self's apartment and smeared his bloody fingerprints in an attempt to destroy any evidence. He then went to a friend's house, but eventually left town for Ft. Lauderdale, Florida, where he was arrested two months later. While in custody at the Florida jail, Van Hook made a full and graphic confession, which included an admission to the killing of David Self as well as to the robbery. *See State v. Van Hook*, 39 Ohio St. 3d 256, 530 N.E.2d 883 (1988). The events at the Florida jail that led to the confession will be discussed in detail below.

Van Hook has never denied killing Self, but he maintains he did so in a rage precipitated by the sexual advances of Self and as the result of a severe borderline personality disorder that caused him to lack the requisite intent to make him guilty of aggravated murder or eligible for the death penalty. Temporary insanity was the basis for Van Hook's defense at trial. The state maintains that Van Hook left the bar with the intention of robbing Self. The three-judge panel that tried Van Hook rejected his defense and convicted him. He was later sentenced to death. After direct and post-conviction review by the Ohio courts and denial of the writ by the district court, Van Hook appealed to our Court, raising multiple issues, only one of which will be discussed herein.

## I.

Our decision to reverse the district court and issue the writ is based on the failure to suppress Van Hook's incriminating statements after police improperly reinitiated contact with him after he had requested counsel. The district court rendered its initial decision on this issue in response to Van Hook's motion for partial summary judgment. *Van Hook v. Anderson*, No. C-1-94-269 (S.D. Ohio Mar. 28, 2002). It reaffirmed this decision without substantial further discussion in its final order dated August 7, 2003, from which Van Hook appeals.[1]

It is well-settled that once having expressed a desire to law enforcement officials to consult an attorney, an accused is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Abela v. Martin,* 380 F.3d 915, 925 (6th Cir. 2004) (noting that *Edwards* establishes a bright-line rule to cease interrogation once an accused's *Miranda* right to counsel is invoked). In *Edwards*, the Supreme Court established a bright-line rule that once a suspect is in custody and invokes the right to counsel, law enforcement may not further interrogate him until counsel has been made available, or unless the suspect initiates further conversations or exchanges with the police. The Supreme Court has broadly defined interrogation as any exchange between police and a suspect in custody reasonably likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 301 n.7, 302, n.8 (1980). Supreme Court cases decided subsequent to *Edwards* confirm the paramount importance of a defendant's right not to be questioned without counsel after invocation of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See Smith v. Illinois*, 469 U.S. 91, 98 (1984) (purpose of the rule formulated in *Edwards* is to prevent police "badgering or overreaching--explicit or subtle, deliberate or unintentional")*; Arizona v. Roberson,* 486 U.S. 675, 682 (1988) (holding that police may not question a defendant about any unrelated crimes after invocation of the right to counsel, even if such crimes are the subject of a separate investigation); *Minnick v. Mississippi,* 498 U.S. 146, 152 (1990) (holding that after invocation of the right to counsel, police may not reinitiate interrogation without counsel present); *McNeil v. Wisconsin,* 501 U.S. 171, 177 (1991) (noting that

---

[1] Van Hook's habeas petition was filed prior to passage of the Anti-terrorism and Effective Death Penalty Act, and we, therefore, review his claims under the law as it existed before enactment of AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 322-27 (1997). Under the applicable standard of review, findings of fact made by the state court are presumed correct unless "clear and convincing" evidence demonstrates error and questions of law or mixed questions of law and fact are reviewed *de novo*. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

the *Edwards* rule is designed to "prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights"). Therefore, under *Edwards*, initiation of conversation is permissible only when, "*without influence by the authorities*, the suspect shows a willingness and a desire to talk generally about his case." *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994) (emphasis added). The determination of whether an *Edwards* initiation has occurred is a legal issue. *Id.* at 968. The state bears the burden of proving that a defendant "voluntarily, knowingly, and intelligently waived his right to silence and counsel." *Abela*, 380 F.3d at 928; *United States v. Bentley,* 726 F.2d 1124, 1126 (6th Cir.1984).

The *Edwards* rule finds its genesis in *Miranda v. Arizona*, 384 U.S. 436 (1966), where the Supreme Court held that the police must advise a suspect of his right to counsel and, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. In *Edwards*, a Fifth Amendment case, the Court explained that "it is inconsistent with *Miranda* and its progeny for authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Edwards*, 451 U.S. at 485. In *Michigan v. Jackson,* 475 U.S. 625 (1986), the Court extended the *Edwards* rule to the Sixth Amendment context.

If the police subsequently initiate an encounter in the absence of counsel, and there has been no break in custody, the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards. *McNeil v. Wisconsin,* 501 U.S. at 177. Police officers may not continue to question a suspect despite his request for counsel "in the hope that [he] might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all." *Smith*, 469 U.S. at 99 (internal quotation marks and citation omitted). This prohibition applies to *all officers*, not just those present when the suspect invoked his right to counsel. *Arizona v. Roberson*, 486 U.S. at 687-88 (citation omitted) (emphasis added).

Based on this line of authority, Van Hook filed a motion to suppress all statements he had made to law enforcement subsequent to his arrest, including the taped confession he made to the Cincinnati police in the Florida jail. At the suppression hearing, it was established that Van Hook was given his *Miranda* rights by a Florida detective after he was arrested and in custody at the Florida jail. It was established at the hearing that Van Hook asked for an attorney, whereupon the Florida police ceased asking him questions because they believed he "didn't want to say anything without an attorney." Upon their arrival at the Florida jail later that day, the two Cincinnati detectives knew that Van Hook had invoked his right to counsel and that the Florida detectives had therefore ceased questioning him. Transcript of Suppression Hearing at 15-16, *Ohio v. Van Hook*, No. B-851389/C-850565 (Court of Common Pleas, Hamilton County, June 17, 1985).

The conversation between the Cincinnati detectives and Van Hook began by discussing extradition procedures and informing Van Hook that they intended to return to Cincinnati with him the next day – proper topics of discussion with a defendant who has requested, but not yet consulted, counsel. However, the conversation did not end there. Detective Davis of the Cincinnati homicide squad testified at the suppression hearing:

> [W]e advised [Van Hook] we had a lot to talk to him about. I advised him I had been in contact with his mother, I advised him that we could not talk to him unless he wanted to talk to us and make a statement.

Transcript of Suppression Hearing at 14*, Ohio v. Van Hook*, No. B-851389/C-850565 (Court of Common Pleas, Hamilton County, June 17, 1985). However, Detective Davis also testified that although he did tell Van Hook that "we could not talk to him unless he wanted to talk," he did not tell Van Hook that he could not question him because Van Hook had requested counsel. *Id.* at 20.

Detective Davis also testified that he had not received any direct communication that would indicate that Van Hook desired to speak with him or any law enforcement official:

> Q.      Okay. And did you receive any information, either in your phone conversation with Detective Moody [of the Ft. Lauderdale police] or upon your arrival in Ft. Lauderdale indicating that Mr. Van Hook desired to talk to you?

An objection was made and overruled. The question was read again and Detective Davis answered "No." *Id.* at 11-12. It was also demonstrated at the suppression hearing that Cincinnati officials had contacted Van Hook's mother in order to obtain information on Van Hook's location and to obtain her assistance in inducing Van Hook to talk to police. The state trial court denied the motion to suppress and Van Hook's taped confession came in at trial.

The Ohio Supreme Court concluded that the trial court had not erred when it refused to suppress Van Hook's statement because "the record demonstrates that appellant himself reinitiated his own interrogation through a third party." *State v. Van Hook*, 39 Ohio St. 3d at 259, 530 N.E.2d at 886. It held, and the district court below agreed, that when Detective Davis told Van Hook that he, Davis, had been in contact with Van Hook's mother and that "we had a lot to talk to him about," these words demonstrated on the part of Van Hook a "willingness and desire, through his mother" to talk to police. This finding is not supported legally or factually.

The Supreme Court has directed that two elements be examined to determine whether the police have obtained a statement in violation of *Edwards'* "rigid prophylactic rule." *Smith,* 469 U.S. at 95 (internal quotation marks and citation omitted). First, a court must "determine whether the accused actually invoked his right to counsel" in a clear and unambiguous manner. *Id*.; *see also Davis v. United States,* 512 U.S. 452, 459 (1994). If it is clear that counsel was requested, the court must determine who initiated the further discussions that yielded the eventual statement. *Smith*, 469 U.S. at 95. If an accused, after invoking his right to counsel, did not "initiate[ ] further discussions with the police," any statement procured by the police is inadmissible at trial. *Id.*

Turning to the requirement under *Edwards* that the request for counsel be unambiguous, all the courts, state and federal, that have reviewed this case have found no question to exist as to whether Van Hook invoked his right to counsel. As the district court stated, "there is no question that [Van Hook] invoked his right to counsel, that the Cincinnati police knew he had invoked his right to counsel, and at no time prior to speaking with the Cincinnati police was [Van Hook] furnished with counsel." Order at 7, *Van Hook v. Anderson*, C-1-94-269 (S.D. Ohio Mar. 28, 2002). Therefore, the sole question before us is whether Van Hook reinitiated contact with the police through a conversation with his mother.

There is much speculation of what Van Hook's mother said to Detective Davis.[2] Under our reading of *Edwards*, it is unnecessary to know what transpired in that conversation. It is undisputed that Van Hook *himself* did not initiate contact with the police: there "is not a scintilla of evidence in the record to show that [Van Hook] initiated further discussion" with police. 39 Ohio St. 3d at 266, 530 N.E.2d at 892 (Wright, J., dissenting). Relying on the plain language from *Edwards* that the *accused himself* must reinitiate discussions, we agree with Van Hook's argument that no one but a suspect himself can initiate further discussions with police after counsel has been requested but not yet furnished. Because Van Hook did not initiate the conversation himself, his constitutional

---

[2]We do not know exactly what was said between Detective Davis and Van Hook's mother because at the suppression hearing the court sustained objections by Van Hook's counsel relating to the conversation between Detective Davis and Mrs. Van Hook, thereby limiting the amount of information that came in about the conversation. The Ohio appellate courts found this omission to be in error because hearsay is allowed at suppression hearings.

rights were violated and the incriminating statements he made in the Florida jail must be suppressed.

The evidence here shows that Van Hook did not initiate conversation with the police. Rather, he gave a statement only after Detective Davis told him that he, Davis, had spoken with his mother, and they "need[ed] to talk." In *Arizona v. Roberson,* 486 U.S. 675 (1988), the Supreme Court explained that the bright-line, prophylactic *Edwards* rule protects against the inherently compelling pressures of custodial interrogation by creating a presumption that any subsequent waiver of the right to counsel at the authorities' behest was coercive and not purely voluntary. *Id.* at 685-86. Moreover, the Supreme Court expressly rejected the contention that the fresh issuance of *Miranda* warnings, after the suspect requested counsel, would overcome the pressures created by the custodial nature of the situation. *Id.* at 686; *see also United States v. Hall,* 905 F.2d 959, 961, 964-65 (6th Cir.1990) (holding that once an accused expresses a desire to deal with police only through counsel, a presumption is created that any subsequent waiver of the right to counsel at the authorities' behest is coercive and not purely voluntary and relying on *Roberson* to reject the proposition that "a fresh set of *Miranda* warnings would reassure a suspect who had been denied counsel that his rights would remain untrammeled").

## II.

Because we hold that it was error to admit Van Hook's statements, we must "review[ ] the remainder of the evidence against [him] to determine whether the admission of the confession was harmless beyond a reasonable doubt." *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991). A confession can be "the most probative and damaging evidence that can be admitted against [a defendant]." *Id.* at 296 (internal quotation marks and citation omitted). In his authoritative concurrence in *Brecht v. Abrahamson,* 507 U.S. 619, 641 (1993), Justice Stevens adopted the applicable standard of harmless error from *Kotteakos v. United States,* 328 U.S. 750, 765 (1946), which requires that if "one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." Because Van Hook's statements were self-incriminating and among the most significant evidence marshaled against him by the state, we do not find their admission into evidence harmless. Because we "cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error" of admitting Van Hook's unconstitutionally obtained statements, we find that the constitutional errors in this case are not harmless, and accordingly, we grant Van Hook's request for habeas relief on this ground. All other issues are pretermitted.

We reverse the judgment of the district court and remand with instructions that Van Hook be released from state custody if not retried by the State of Ohio within 180 days of the final federal court judgment in this case.

Accordingly, it is so ordered.