RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0086a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT J. VAN HOOK,

                *Petitioner-Appellant,*

    *v.*

CARL S. ANDERSON, Warden,

                *Respondent-Appellee.*

No. 03-4207

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 94-00269—George C. Smith, District Judge.

Argued: December 6, 2005

Decided and Filed: March 6, 2009

Before: MERRITT, MARTIN, and MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** James D. Owen, THE OWEN LAW FIRM, Columbus, Ohio, Keith A. Yeazel, Columbus, Ohio, for Appellant. Stephen E. Maher, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellee. **ON BRIEF:** Keith A. Yeazel, Columbus, Ohio, James D. Owen, THE OWEN LAW FIRM, Columbus, Ohio, for Appellant. Stephen E. Maher, Charles L. Wille, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellee.

_____

**AMENDED OPINION**

_____

MERRITT, Circuit Judge. At the request of the majority of the *en banc* court and in order to avoid the need for an *en banc* rehearing, the original panel amends its opinion of August 4, 2008, by deleting its discussion of counsel's failure to seek an independent mental health expert and the failure of counsel to object to the Presentence Report. Therefore, the

sole basis for the issuance of the writ of habeas corpus is counsel's failure to investigate mitigating factors.

This is an appeal in an Ohio death penalty case by the prisoner, Van Hook, seeking habeas corpus relief under 28 U.S.C. § 2254. On the evening of February 18, 1985, petitioner Robert Van Hook arrived at a bar frequented by male homosexuals in Cincinnati, Ohio. He left the bar with David Self, and the two proceeded to Self's apartment. Once there, Van Hook strangled Self to the point of unconsciousness. He then brutally killed Self, stabbing him several times in the head and abdomen. After stealing a few items from Self's apartment, Van Hook fled to Florida, where he was apprehended over a month later and subsequently confessed to the murder.[1]

Back in Ohio, Van Hook waived his rights to a trial by jury, and he pleaded not guilty and not guilty by reason of insanity. The three-judge panel, elected under Ohio law, rejected this defense and found him guilty of aggravated murder and aggravated robbery, which made him eligible for the death penalty under Ohio Rev. Code Ann. § 2929.04(A) (West 2008). Finding that the mitigating evidence did not outweigh the aggravators, the three-judge panel imposed the death penalty instead of life imprisonment.

Though he did not deny killing Self, Van Hook asserted unsuccessfully a variety of errors both on direct appeal and in state post-conviction proceedings. *See State v. Van Hook*, 530 N.E.2d 883 (Ohio 1988), *cert. denied*, 489 U.S. 1100 (1989). After exhausting all of his state court remedies, Van Hook sought a writ of habeas corpus in federal district court.

The district court denied the petition on all asserted claims of error. Our panel then reversed the judgment of the district court because under *Edwards v. Arizona*, 451 U.S. 477 (1981), Van Hook's confession to the Cincinnati Police should have been suppressed. We pretermitted all other remaining issues. *Van Hook v. Anderson*, 444

---

[1]For a more detailed recitation of the facts surrounding the murder and Van Hook's apprehension, *see State v. Van Hook*, 1987 WL 11202 (Ohio Ct. App. May 13, 1987), and *Van Hook v. Anderson*, 444 F.3d 830 (6th Cir. 2006), *vacated en banc*, 488 F.3d 411 (2007).

F.3d 830 (6th Cir. 2006), *vacated en banc*, 488 F.3d 411 (6th Cir. 2007) (by a vote of 8-7), *cert. denied*, 128 S. Ct. 614 (2007).  After the Sixth Circuit, *en banc*, vacated our judgment and affirmed the district court's denial of the petition on the confession issue, the majority returned this case to our panel to analyze Van Hook's remaining grounds for habeas relief.

After a careful review of the record, we conclude that Van Hook's trial counsel was ineffective during the mitigation phase of the trial, thereby violating his rights under the Sixth Amendment, as interpreted by the Supreme Court in three cases, *Strickland v. Washington*, 466 U.S. 668 (1984); *Wiggins v. Smith*, 539 U.S. 510 (2003) (incorporating the American Bar Association Guidelines For the Appointment and Performance of Counsel in Death Penalty Cases as the professional standard of performance), and *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (same).  His counsel was deficient by failing to fully investigate and present as evidence all available mitigating factors.  We reverse the decision of the district court with respect to ineffective assistance of counsel at the mitigation phase of the trial.  We remand the case to the district court with instruction to issue a writ of habeas corpus vacating Van Hook's death sentence unless the State conducts a new penalty phase proceeding within 180 days of remand.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, *et seq*., was signed into law and became effective on April 24, 1996.  Because Van Hook filed his habeas corpus petition on October 10, 1995, the Act does not apply as a constraint on our interpretation and application of constitutional standards in this death penalty case.  *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).  We review *de novo* the conclusions of the district court.  *See Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003).

Since 1984, the standard for whether counsel's ineffectiveness fell below the minimum requirements of the Sixth Amendment contains two components:  (1) the deficient performance of counsel and (2) the resulting prejudice to the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prevail on an ineffective assistance of counsel claim, Van Hook must satisfy both the deficient performance and

prejudice prongs of *Strickland*. *See Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005). For Van Hook to prove that his counsel's performance was constitutionally deficient, the performance must have fallen "below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. at 688, "under prevailing professional norms." While the Court in *Strickland* did not lay out a detailed, bright-line set of rules for determining whether counsel's performance is adequate, as it did later in *Wiggins* and *Rompilla*, the Court did require that in normal cases such as this one counsel must investigate fully all aspects of a case, *id.* at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). It explained that this duty is of utmost importance in capital murder cases, especially at the mitigation phase where the lawyer's work may be the difference between life and death. *See id.* at 706 (Brennan, J., concurring in part and dissenting in part); *Harries v. Bell*, 417 F.3d at 637 ("The prospect of being put to death unless counsel obtains and presents something in mitigation magnifies counsel's responsibility to investigate") (emphasis and internal quotations omitted). Thus, the typical focus of analysis in an ineffective assistance of counsel during mitigation case is "whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (emphasis in original).

After *Strickland*, this Court and the Supreme Court made clear in a number of cases that counsel in death cases should follow closely the ABA standards referred to above. *See Wiggins v. Smith*, 539 U.S. at 524, *Rompilla v. Beard*, 545 U.S. at 387 (2005) ("[W]e long have referred [to ABA standards] as guides to determine what is reasonable") (internal quotations omitted); *Haliym v. Mitchell*, 492 F.3d 680, 717-18 (6th Cir. 2007) (explaining that "the fact that counsel's performance fell short of several of the American Bar Association's guidelines" further reinforced the conclusion that counsel's performance was deficient). We have explained clearly that the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases [hereinafter ABA Guidelines] provide the "guiding rules and standards to be used in defining the 'prevailing professional norms' in ineffective assistance cases." *Hamblin*

*v. Mitchell*, 354 F.3d 482, 486 (6th Cir. 2003); *see also Dickerson v. Bagley*, 453 F.3d 690, 693 (6th Cir. 2006) ("Our Court has made clear that . . . counsel for defendants in capital cases must fully comply with [the ABA Guidelines].").

Van Hook is correct that the performance of his trial counsel was deficient during the mitigation phase because his attorneys failed to fully investigate and present evidence of all the potential mitigating factors that could have reduced his sentence from death to life imprisonment.  Counsel has a duty to investigate fully, unless counsel makes a reasonable strategic choice to limit the investigation.  *See Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable judgments support the limitations on investigation.").

Our Court's precedents make clear that a partial but ultimately incomplete mitigation investigation is inadequate.  *See Dickerson v. Bagley*, 453 F.3d 690, 695-97 (6th Cir. 2006) (holding that trial counsel was ineffective, despite having presented eight witnesses at mitigation, for failing to discover and introduce evidence that the defendant had a low I.Q., had a borderline personality disorder, was taunted at school, and was referred to as "the moron" by his mother); *Harries v. Bell*, 417 F.3d 631, 638 (6th Cir. 2005) (holding trial counsel deficient at mitigation for failing to fully investigate the defendant's family history and mental health, despite having conducted at least six interviews). This is particularly true when counsel's investigation failed to reveal any of the significant, potentially mitigating details of the defendant's personal and family history.  *See Haliym v. Mitchell*, 492 F.3d 680, 713 (6th Cir. 2007) (explaining that "the Sixth Circuit has frequently considered [the defendant's family history of abuse] an important mitigation factor").  Because the "history, character, and background of the offender" is expressly listed as a statutory mitigating factor, Ohio Rev. Code Ann. § 2929.04(B), it is of utmost importance for counsel to investigate fully and present any aspects of the defendant's upbringing that might bear on his culpability.  The ABA Guidelines explain that this investigation ought to include interviews with family members and all other people who knew the client:  "It is necessary to locate and

interview the client's family members (who may suffer from some of the same impairments as the client), and virtually everyone else who knew the client and his family, including neighbors, teachers, clergy, case workers, doctors, correctional, probation or parole officers, and others." ABA Guidelines ¶ 10.7, at 83. Such thorough interviews are necessary to reveal all potential arguments to support a case for mitigation.

Both this Court and the Supreme Court have also held counsel's performance deficient when counsel's last-minute investigation resulted in overlooking potentially powerful mitigating evidence. *See Williams v. Taylor*, 529 U.S. 362, 396-99 (2000) (explaining that counsel only began preparing for the mitigation proceeding "a week before the trial," thus not having enough time to uncover records of the defendant's "nightmarish childhood"); *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003) (stating that the trial counsel spent only "two full business days" preparing for mitigation); *Glenn v. Tate*, 71 F.3d 1204, 1207 (holding that counsel's failure to make any significant preparations for the mitigation phase until after the conclusion of the guilt phase was itself "objectively unreasonable"). The requirement for counsel to perform thorough, not last-minute, investigations before a mitigation hearing is further reinforced by the ABA Guidelines: "The mitigation investigation should begin as quickly as possible, because it may affect the investigation of first phase offenses, decisions about the need for expert evaluations, motions practice, and plea negotiations." ABA Guidelines ¶ 10.7 at 82 (internal parentheticals omitted). The ABA Guidelines also explain that preparing for the mitigation phase of trial "requires extensive and generally unparalleled investigation into personal and family history," *Id.* ¶ 10.7, at 81, as well as school, medical and psychological records.

Applying these clear rules to the performance of Van Hook's trial counsel, it is clear that counsel's investigation into and presentation of mitigating evidence was deficient. While Van Hook's trial attorneys uncovered a little information about his traumatic childhood experience in their last-minute investigation, many of the most important details were not discovered and therefore were never presented to the

sentencer. Significantly, trial counsel's investigation failed to reveal that Van Hook's parents repeatedly beat him (J.A. at 1619), that he had witnessed his father attempt to kill his mother several times (J.A. at 1619), and that his mother was committed to a psychiatric hospital when he was between four and five years old (J.A. at 1570). These details of his childhood are even more unsettling and potentially mitigating than the omitted family background evidence in *Dickerson*, where the omitted evidence simply included the fact that the defendant had been taunted at school and referred to as the "moron." The details about Van Hook's childhood, which were uncovered later by the more thorough investigation of Van Hook's habeas counsel, demonstrate that trial counsel's investigation into Van Hook's background was never finished because the investigation was conducted at the last minute.

Van Hook's counsel's mitigation investigation did not "begin quickly" before trial. Rather, after the guilt phase, counsel started a last minute investigation for the mitigation hearing. (J.A. at 4400-04.) His attorneys thus spent far less time preparing than the counsel in *Williams*, where counsel was deemed ineffective for not having begun preparing for mitigation until a week before the guilt phase of trial. This cursory preparation for mitigation also parallels the preparations by counsel in *Glenn*, which this Court held to be objectively unreasonable.

By not performing the sort of extensive, thorough investigation that is a minimum requirement of trial counsel in these cases, the performance of Van Hook's counsel turned up very little of the available mitigation evidence. Contrary to the perception of the state appellate court, this omitted evidence was much more than "merely cumulative." *State v. Van Hook*, 1992 WL 308350, at *2 (Ohio Ct. App. Oct. 21, 1992). This omitted evidence goes far beyond the brief details of his parents' alcohol abuse and dysfunctional relationship that were presented at mitigation.

Nor can counsel's decision to terminate the mitigation investigation before uncovering this information be considered a reasonable, strategic decision. Considering the information that they had already learned about Van Hook's abusive family background, counsel certainly had reason to suspect that much worse details existed.

But his attorneys decided not to interview or even contact Van Hook's step-sister, his paternal uncle, two of his paternal aunts, his maternal uncle, and the psychiatrist who treated his mother when she was committed. All of these individuals could have helped his counsel narrate the true story of Van Hook's childhood experiences in mitigation. All of them would have been willing to testify on his behalf. (J.A. 1569-73, 1619-26.)[2]

Failing to complete a mitigation investigation when additional family witnesses are available is not sound trial strategy; neither is waiting until four days before the mitigation hearing to begin the investigation. *See Williams v. Taylor*, 529 U.S. 362, 395 (2000); *Haliym v. Mitchell*, 492 F.3d 680, 712 (6th Cir. 2007); *Dickerson v. Bagley*, 453 F.3d 690, 695 (6th Cir. 2006); *Harries v. Bell*, 417 F.3d 631, 638 (6th Cir. 2005). Because his trial lawyers failed to conduct a full mitigation investigation and present available mitigating evidence to the sentencer, their performance fell short of "prevailing professional norms,'" *Strickland*, 466 U.S. at 688.

For an ineffective assistance of counsel claim to succeed, counsel must not only have performed deficiently, but that performance must have prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 692 (1984). To prevail on the prejudice prong of a *Strickland* claim, Van Hook must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Accordingly, because Van Hook challenges his death sentence, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and

---

[2]Counsel's decision not to introduce additional family background witnesses also cannot be justified under the strategy of attempting to prevent the sentencer from learning about prior criminal convictions. In several of our recent cases where few mitigation witnesses were introduced, we refused to find counsel's performance deficient in large part because these witnesses likely would have had to reveal the defendant's history of violence. *See Durr v. Mitchell*, 487 F.3d 423, 436 (6th Cir. 2007) (finding counsel not to be deficient when introducing family and friend witnesses might have caused prior rape convictions to come up in cross-examination); *Tinsley v. Million*, 399 F.3d 796, 809 (6th Cir. 2005) (finding counsel's decision not to introduce any mitigating character evidence reasonable because it might have revealed his prior manslaughter conviction); *cf. Hartman v. Bagley*, 492 F.3d 347, 360 (6th Cir. 2007) (finding counsel's decision not to introduce expert's report "strategic" because "it paint[ed] a decidedly unsympathetic portrait" of the defendant). To the contrary, the sentencer in Van Hook's case already knew of his prior convictions, and any additional witnesses that might have been called would have only further developed his case for mitigation.

mitigating circumstances did not warrant death." *Id.* at 695. Van Hook must therefore show that his counsel's errors "were serious enough to deprive [him] of a proceeding the result of which was reliable." *Glenn v. Tate*, 71 F.3d 1204, 1210 (6th Cir. 1995).

Counsel's deficient performance prevented the three-judge panel from learning fully about the two statutory mitigating factors that were the strongest in his case — his traumatic family background and his mental illness.

Had his attorneys performed a complete mitigation investigation, that panel would have learned how Van Hook was often beaten by his parents, how he saw his father try to kill his mother, and how his mother was committed to a psychiatric hospital when he was a young child. (J.A. at 1570, 1619.) Further, had his attorneys sought out the available family members willing to help tell his story, that panel would have heard additional "first-hand accounts from those who knew [Van Hook] best." *Powell v. Collins*, 332 F.3d 376, 400 (6th Cir. 2003).

Our conclusion is bolstered by the fact that Ohio is a so-called "weighing" state, which means that the aggravating circumstances must outweigh the mitigating factors in order to impose the death penalty. Ohio Rev. Code Ann. § 2929.04(B). Van Hook's conviction only qualified for one of Ohio's statutory aggravating circumstances: his offense "was committed while [he] was committing . . . aggravated robbery." *Id.* § 2929.04(A)(7). Thus, the introduction of more available mitigating evidence could certainly have tipped the scales in favor of his life. The threshold for finding prejudice in this case is thus lower than in previous cases, where we found prejudice despite the trial courts' having found multiple aggravating circumstances. *Cf. Dickerson v. Bagley*, 453 F.3d 690, 691 (6th Cir. 2006) (finding prejudice on reweighing despite two aggravating factors); *Harries v. Bell*, 417 F.3d 631, 634 (6th Cir. 2005) (same); *Skaggs v. Parker*, 235 F.3d 261, 264 (6th Cir. 2000) (same).

We believe that "there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. This is especially true because, as in *Dickerson*, "any one of the three judges alone could have prevented

imposition of the death penalty."    453 F.3d at 699 (citing Ohio Rev. Code Ann. § 2929.03(D)(3), which requires unanimity for a death sentence).  While it is possible that the panel "could have heard the evidence described above, and still have decided on the death penalty . . . that is not the appropriate test.  Instead, we must ask whether 'the available mitigating evidence, taken as a whole, might well have influenced the [panel's] appraisal of [Van Hook's] culpability.'"  *Harries v. Bell*, 417 F.3d 631, 640 (6th Cir. 2005) (citations omitted) (quoting *Wiggins v. Smith*, 539 U.S. 510, 538 (2003)). Considering the evidence that was available and yet omitted, we conclude that, absent Van Hook's counsel's deficiency, there is a reasonable probability that the result of his sentencing proceeding would have been different.  The errors were "serious enough to deprive [him] of a proceeding the result of which was reliable."  *Glenn v. Tate*, 71 F.3d 1204, 1210 (6th Cir. 1995).

Because we have decided that counsel failed to conduct a full mitigation investigation and present available mitigating evidence to the sentencer and thereby offered constitutionally ineffective assistance to Van Hook at the sentencing phase of the trial, we will not decide, and we therefore pretermit, the remaining issues.  For the foregoing reasons, we reverse the decision of the district court and remand the case to the district court with instructions to issue a writ of habeas corpus vacating Van Hook's death sentence unless the State conducts a new penalty phase proceeding within 180 days of remand.