RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ROBERT J. VAN HOOK

          *Petitioner-Appellant,*

      *v.*

DAVID BOBBY, Warden,

          *Respondent-Appellee.*

No. 03-4207

On Remand from the United States Supreme Court.
No. 94-00269—George C. Smith, District Judge.

Argued:  March 10, 2011

Decided and Filed:  October 4, 2011

Before:  MERRITT, MARTIN, and MOORE, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Keith A. Yeazel, Columbus, Ohio, for Appellant.  Stephen E. Maher, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Keith A. Yeazel, James D. Owen, Columbus, Ohio, for Appellant.  Stephen E. Maher, Alexandra T. Schimmer, David M. Lieberman, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

### OPINION

_____

    MERRITT, Circuit Judge.  This opinion represents this panel's fourth review of this case.  Robert Van Hook petitioned for federal habeas corpus relief in 1995 after waiving trial by jury and after a three-judge Ohio panel sentenced him to death for the brutal murder of David Self in connection with a homosexual encounter and after the Ohio courts upheld Van Hook's death sentence.  *State v. Van Hook*, 530 N.E.2d 883, 884 (1988) (finding that Van Hook "lured Self into a vulnerable position," strangled him,

1

killed him with a kitchen knife and mutilated his body), *cert. denied*, 489 U.S. 1100 (1989) (Brennan and Marshall, JJ., dissenting).  The Ohio courts then denied Van Hook's petition for post-conviction relief, *State v. Van Hook*, No. C-910505, 1992 WL 308350 (Ohio Ct. App., Oct. 21, 1992).  The Antiterrorism and Effective Death Penalty Act of 1996 does not apply.  After the district court denied all of his habeas claims, this panel reversed, first concluding that Van Hook's confession was unconstitutionally obtained in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981).  *See Van Hook v. Anderson*, 444 F.3d 830 (2006).  The *en banc* Sixth Circuit disagreed and vacated that ruling and remanded the case to the panel to consider Van Hook's other claims.  *Van Hook v. Anderson*, 488 F.3d 411 (2007).  On remand, the panel granted habeas relief again, but this time on the theory that Van Hook's trial counsel was constitutionally ineffective during the penalty phase of his trial.  *Van Hook v. Anderson*, 535 F.3d 458 (2008).  The *en banc* Sixth Circuit again vacated this panel's opinion and remanded the case to the panel for revision of its opinion.  It reversed the panel's conclusion that the failure to obtain a mental health expert and the failure to object to a presentence report constituted a basis or a factor that justified a finding of ineffective assistance of counsel.  The revised panel opinion again held that Van Hook's trial counsel was constitutionally ineffective during the penalty phase but narrowed the scope of its holding to ineffectiveness only in the investigation and presentation of mitigating evidence.  *See Van Hook v. Anderson*, 560 F.3d 523 (2009).  The United States Supreme Court then granted certiorari and reversed in *Bobby v. Van Hook*, 130 S. Ct. 13 (2009).  The Court held that the panel erred in using as a standard of effective representation the 2003 ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.  Further the Court, like the *en banc* Sixth Circuit, ruled that "counsel's failure to obtain an independent mental health expert" and counsel's reliance on a presentence investigation report could not be the "basis for issuing the writ."  *Id*. at 19 n.2.  The case is now back before the panel again on remand.

Van Hook presents us with three claims.  First, he asserts a *Brady* claim:  he alleges that the trial court and prosecution wrongfully withheld two pieces of exculpatory evidence from him at trial in violation of *Brady v. Maryland*, 373 U.S. 83

(1963). Second, he argues that his trial counsel was constitutionally ineffective for failing to request an independent mental health expert and for requesting a presentence report for the penalty phase. Third, he argues that his appellate counsel on his direct appeal of right was constitutionally ineffective for failing to raise two grounds for relief.

## I.  The *Brady* Claim

The State of Ohio has affirmatively waived the exhaustion of state remedies on the *Brady* issue. Van Hook argues that the trial court and prosecution withheld two pieces of evidence from him during trial in violation of *Brady v. Maryland*. The first piece of evidence is a psychological profile created by psychologist Dr. Walter Lippert for the police during their investigation. (Pet'r's Br. at 11.) After examining the crime scene before the case was solved, Dr. Lippert allegedly suggested in the profile that the killer may have been motivated by a rejection of his own homosexual urges, rather than by robbery. Van Hook argues that this profile is exculpatory and alleges that the police withheld it from him during trial. The original profile is apparently missing from the police documents, and Dr. Lippert is deceased, so Van Hook alleges that he learned of its contents by questioning police officers during federal habeas proceedings. (*Id*. at 11 n.1.) The second piece of evidence is a treatment addendum prepared by psychologist Dr. Nancy Schmidtgoessling, who did testify at trial. The report suggested that the murder may have occurred as the result of a "homophobic panic." (*Id*. at 12-13.) The trial court received her addendum after her testimony, but the trial court did not turn it over to Van Hook. Van Hook now argues the addendum is *Brady* material.

To prevail on a *Brady* claim, the petitioner must show that the withheld exculpatory evidence was material; that is, it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Dr. Lippert's profile and Dr. Schmidtgoessling's addendum suggested the killer may have been motivated by a "homophobic panic" rather than robbery. Van Hook argues that if these materials had been disclosed to him at trial, he would have used them in several ways: (1) to support his insanity defense during the guilt phase and the existence of a "mental disease or defect," a statutory

mitigating factor, during the penalty phase; (2) to negate the murder element of specific intent to cause the death of another person; and (3) to rebut the existence of aggravated robbery, a statutory aggravating factor, during the penalty phase. (Pet'r's Br. at 13-16.) For the following reasons, none of these arguments "put the whole case in such a different light as to undermine confidence in the verdict." *Ibid.*

*First*, the *Brady* evidence would not have added anything of note to the proof. All three mental health experts who testified at trial, like Dr. Lippert's investigative profile, suggested that Van Hook may have been motivated in part by his worry and uncertainty about his own sexuality. Dr. Emmett Cooper testified that Van Hook's momentary break with reality was due in part to the conflicted feelings Van Hook experienced as a result of his homosexual urges. (*See* J.A. 5895.) Dr. Nancy Schmidtgoessling testified that Van Hook was uncomfortable with his sexuality, and that the voluntary homosexual contact between him and the victim triggered a "homosexual panic," the same language she used in her memo. (J.A. 4292-94.) And Dr. Teresito Alquizola testified that Van Hook's anticipation of homosexual contact from the victim may have caused the murder. (J.A. 4349-50.) If the three trial judges were not persuaded by this expert testimony to mitigate the punishment, it is highly implausible that the two pieces of *Brady* evidence, which similarly suggested that Van Hook may have killed the victim due to a "homophobic panic," would have altered their conclusion. The two memos were weaker and less persuasive than the actual testimony and shined no new "light" on the case.

*Second*, there was overwhelming expert testimony at trial that Van Hook neither met the Ohio standard for insanity nor suffered from a mental disease. Dr. Cooper testified that Van Hook could distinguish between right and wrong (J.A. 4227) and that the murder may have been caused in part by Van Hook's use of drugs and alcohol, but not by a mental disease (J.A. 4251-52). Dr. Schmidtgoessling testified that Van Hook never suffered from a mental disease, knew the difference between right and wrong, and could conform his behavior to the requirements of the law. (J.A. 4278-79.) Dr. Alquizola testified in the same way. (J.A. 4328.) No expert testified that Van Hook

met the standard for insanity, nor did any expert testify that the murder was the result of a mental disease. Moreover, neither of the two *Brady* documents state that Van Hook met the standard for insanity or suffered from a mental disease or defect. They do not undermine confidence that the Ohio courts would have reached the same determinations regarding Van Hook's mental condition.

*Third*, overwhelming evidence was presented at trial that Van Hook satisfied the statutory aggravating factor of aggravated robbery. Ohio law defines "aggravated robbery" to include inflicting "serious physical harm on another" while "attempting or committing a theft offense." Ohio Rev. Code Ann. § 2911.01(A)(3). Van Hook stated in his confession and subsequently during each mental evaluation that his intent on the day of the murder was to lure a homosexual for the purposes of robbery. He said that was his motive. (J.A. 5894.) Van Hook admitted searching the victim for money, taking gold chains from the victim's jewelry box, and leaving with the victim's leather jacket. (*Id.*) Even if Van Hook was motivated partially, or even entirely, at the exact moment of the murder by a "homophobic panic," that would not change the fact that he stole some of the victim's personal property by the use of serious physical harm, and hence committed robbery. The *Brady* evidence does not undermine confidence in the trial court's determination that Van Hook satisfied this aggravating factor. Van Hook's *Brady* claim must be denied on the merits.

## II. Ineffective Assistance of Trial Counsel

Van Hook argues that his trial counsel was constitutionally ineffective because trial counsel (1) failed to request an independent mental health expert and (2) requested a presentence report to be prepared and submitted to the trial court during the penalty phase. The Sixth Circuit *en banc* has already expressed its disapproval of these two arguments. When this panel first granted the writ for ineffective assistance of trial counsel, it relied on these two arguments (as well as a third argument, *i.e.*, trial counsel's inadequate preparation and presentation of evidence during the penalty phase). The Sixth Circuit *en banc*, however, vacated that opinion and remanded to this panel for it to revise its opinion; it required this panel to remove all reliance on these two arguments

and ground its holding solely in the third argument.  *See Van Hook v. Anderson*, 560 F.3d 523 (2009).  The Supreme Court rejected the third argument.  Moreover, with regard to these two arguments, the Supreme Court appears to agree with the *en banc* court.  It concluded:

> In his brief in this Court, Van Hook also alludes to his counsel's failure to obtain an independent mental health expert and their reliance on (and failure to object to harmful evidence in) a presentence investigation report — grounds on which the Sixth Circuit panel previously relied but which it abandoned in its final opinion.  *See supra*, at 2-3.  Van Hook now concedes, however, that neither ground is a "basis for issuing the writ."  Brief in Opposition 5, see also *id.*, at 7, and accordingly we do not address them.

The actions of the Sixth Circuit *en banc* and the Supreme Court foreclose the ruling to the contrary that this panel made in its second opinion.  This panel is bound by their decisions.

### III.  Ineffective Assistance of Appellate Counsel

Van Hook contends that his appellate counsel was constitutionally ineffective for not raising, among the assignments of error presented on direct appeal to the Ohio Supreme Court, two specific grounds for relief.  The first ground was that the trial court should not have admitted into evidence the victim-impact statements in which the victim's mother and an arresting police officer urged the imposition of the death penalty; the second ground was that the prosecution committed misconduct by referring to Van Hook's criminal history or capacity for future dangerousness during the penalty phase. The district court, after performing a thorough exposition of the case's procedural history in the state courts (J.A. 4663-68) and a helpful analysis of Ohio's complex rules regarding procedural default by appellate counsel, held that this claim was procedurally defaulted (J.A. 4695-701).

For a claim to be defaulted, (1) there must be a state procedural rule that the petitioner failed to follow, (2) the state courts must have actually enforced that rule, and (3) the rule must constitute an adequate and independent state ground to foreclose review

of the federal claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1985). A petitioner's default on a claim may be excused, however, by a showing of cause and prejudice. *Id.*

Van Hook failed to follow the Ohio state procedural rules for timely filing a claim of ineffective assistance of appellate counsel. Since 1983, the First District of the Ohio Court of Appeals has required those claims to be raised in applications for reconsideration of the direct appeal, rather than in post-conviction petitions. *See State v. Rone*, Nos. C-820322, B-784088, 1983 WL 8877 (Ohio Ct. App. June 1, 1983) (unpublished disposition). And for an application for reconsideration to be timely, it must be filed no more than ninety days from the journalization of the court's judgment, unless the defendant shows good cause. Ohio R. App. P. 26(B)(1). Despite the fact that Van Hook's case arose in the First District and was governed by this rule, he initially asserted his claim of ineffective assistance of appellate counsel in a post-conviction petition, not an application for reconsideration. (J.A. 1503-06.) The state trial court, presumably relying on (although not expressly citing), *Rone*, denied the claim because it "cannot be raised in post conviction." (J.A. 2137.) The state appellate court affirmed, expressly citing its earlier decision in *Rone*. (J.A. 2518.) It was not until March 9, 1993 — nearly six years after the journalization of the judgment, which occurred on May 13, 1987 (*see* J.A. 4664), and approximately thirty-five months after the trial court's judgment and five months after the appellate court's judgment — that Van Hook asserted this claim using the proper procedure: *I.e.*, in an application for reconsideration of his direct appeal.

The state appellate court actually enforced the state's rules when it denied Van Hook's claim. It denied his claim because he "failed to show good cause for filing it more than ninety days" after the journalization of the court's judgment in his direct appeal. (J.A. 2989-90.) The state court cited Ohio Rule of Appellate Procedure 26(B), which provides that "[a]n application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause." Van Hook correctly argues to this Court that the effective date of Rule 26(B) was July 1, 1993 — approximately two

months *after* he filed his application for reconsideration — so that precise rule could not have barred his claim.  But he ignores the fact that Rule 26(B)'s predecessor, which did apply to his claim, imposed a similar (indeed, a slightly stricter) timeliness presumption: prior to Rule 26(B), an application for reconsideration was untimely if it was not filed within ten days, again unless good cause was shown.  *See State v. Murnahan*, 584 N.E.2d 1204, 1408-09 & nn. 3 & 7 (Ohio 1992) (citing Ohio R. App. P. 14(B) & 26(A)).  Van Hook's delay was not one of days, but rather of years.  Thus, it did not matter whether the rule in effect at the time presumed timeliness if within ten days or ninety days.  All that mattered, under either rule, was whether Van Hook showed good cause for his six-year delay.  The state appellate court reasonably found that he did not.

These Ohio procedural rules constitute an adequate and independent state ground to foreclose review of the federal claim.  This circuit has already held at least three times — in cases with procedural histories strikingly similar to each other and to Van Hook's case — that *Rone's* requirement that claims of ineffective assistance of appellate counsel must be filed in applications for reconsideration and Rule 26's timeliness standard are adequate and independent state grounds.  *See Poindexter v. Mitchell*, 454 F.3d 564, 583-84 (6th Cir. 2006); *Hicks v. Collins*, 384 F.3d 204, 212 (6th Cir. 2004), *Coleman v. Mitchell*, 244 F.3d 533, 539-41 (6th Cir. 2001); *but see Franklin v. Anderson*, 434 F.3d 412, 419-21 (6th Cir. 2006).  Van Hook concedes that this circuit has held *Rone* to be a valid state procedural bar, but he argues that this holding (indeed, the holding of *three* separate panels) is "not valid" because *Rone* is an unpublished opinion, and at the time Van Hook presented his claim of ineffective assistance of appellate counsel to the Ohio courts, unpublished opinions of the Ohio Court of Appeals were not considered controlling precedential authority. (Pet'r's Br. at 50-51 & n.3 (citing Ohio S. Ct. R. Rep. Op. 2(G)(1))).  While this argument has some force, "[a] panel of this Court cannot overrule the decision of another panel."  *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).  Thus, this panel is bound to find the unpublished decision of the Ohio Court of Appeals in *Rone* to be an adequate and independent state ground.

Van Hook argues that two procedural developments that occurred while his case was pending in the state courts — the Ohio Supreme Court's decision in *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1991), and the subsequent amendment to Ohio Rules of Appellate Procedure 26 — somehow change this analysis. Pet'r's Br. at 50 & n.2. He is wrong. *Murnahan* held that claims of ineffective assistance of appellate counsel must be raised in applications for reconsideration, rather than in post-conviction petitions; in essence, it took what the First District of the Ohio Court of Appeals had been doing for nearly a decade, and mandated it statewide. *Id.* at 1208-09. It also suggested that the Ohio Advisory Rules Committee extend the timeliness presumption beyond the then-existing ten-day period in Rule 26(A), *id.* at 1208-09 & nn.3 & 6, which the rules Committee shortly did by creating the ninety-day period in Rule 26(B). *Murnahan* was handed down on February 19, 1992, between when the Ohio trial court (J.A. 2137) and the Ohio appellate court (J.A. 2318) denied Van Hook's post-conviction petition under *Rone*; Rule 26(B) became effective on July 1, 1993, between when Van Hook filed his application for reconsideration (*see* J.A. 4666) and when the Ohio Court of Appeals denied it as untimely (J.A. 2989).

These intervening procedural developments, however, had no effect on Van Hook's case because they did not alter the settled procedure in place at the time in the First District. *Coleman v. Mitchell*, again, is directly controlling authority. The timing of the state procedural history in that case was, for all relevant purposes, *identical* to the timing in Van Hook's case: the defendant's case arose in the First District in the early 1990's, defense counsel erroneously raised a claim of ineffective assistance of appellate counsel in a post-conviction petition, the Ohio Supreme Court released *Murnahan* while the post-conviction petition was pending, the First District denied the claim on the basis of *Rone*, defense counsel filed a much-delayed application for reconsideration, and the First District denied it as untimely, citing Rule 26(B). 244 F.3d at 539-41; *see also Poindexter*, 454 F.3d at 583-84 (similar timing); *Hicks*, 384 F.3d at 212 (similar timing). There is no plausible way to distinguish *Coleman*, which found the habeas petitioner's claim to be procedurally defaulted. Moreover, its holding is logical: although *Murnahan* and the transition to Rule 26(B) may have upended the proper procedure for

filing ineffective assistance of appellate counsel claims in 1992 and 1993 throughout most of the state, it did not do so in the First District, which had required for nearly a decade those claims to be timely filed in applications for reconsideration.

For the foregoing reasons, the district court properly held that Van Hook's claim of ineffective assistance of appellate counsel was procedurally defaulted. Van Hook presents no argument in his brief that his default should be excused due to cause and prejudice. Accordingly, this Court holds that Van Hook's procedural default bars habeas relief on this claim.

Accordingly, the judgment of the District Court denying the writ of habeas corpus is affirmed.